LEWIS H. BERGFIELD ET AL., APPELLANTS, V. CHARLES BERGFIELD, APPELLEE.

FILED NOVEMBER 10, 1932.   NO. 28134.

*Fred E. Maurer* and *Frank J. Munday,* for appellants.

*Bernard McNeny, L. A. Sprague* and *J. S. Gilham,* contra.

Heard before GOSS, C. J., DEAN and PAINE, JJ., and BROADY and RHOADES, District Judges.

RHOADES, District Judge.

The plaintiffs, Lewis H. Bergfield and Viola Bergfield, herein designated as appellants, commenced this action against their brother, Charles Bergfield and other children and grandchildren of their mother Henrietta Bergfield, who died intestate December 28, 1929, the prayer of their petition being for partition of an 80-acre farm of which their mother held the record title at the time of her death.

The defendant, Charles Bergfield, herein designated as appellee, answered admitting the relationship of the parties, and generally denying the other allegations of the petition, and by way of cross-petition alleged that in the year 1912 his mother was a widow then 67 years of age, having in her care a mentally incompetent granddaughter, and possessing no property or means with which to support herself and the granddaughter; that appellee, the youngest child, was then living on and farming the place for his mother, all of the other children having left the home; that in the year 1912 and while so situated the mother made an oral contract and agreement with appellee by which she promised that, if appellee would continue to live with her, make a home for and support her and assist in taking care of the incompetent granddaughter, she would deed or will the farm to appellee; that appellee, relying thereon, fully performed said agreement during his mother's lifetime and still continues to support the child; that appellee has been in continuous possession of the farm ever since, paid all taxes thereon

and improved same. Appellee further states in detail the services rendered and expenses incurred by him in reliance upon his mother's said promise and agreement; that he kept no account of such services, expenses or improvements, but that same would in the aggregate greatly exceed the value of the farm; that appellee's mother neglected to make a will or deed as agreed. Appellee prayed for specific performance of the oral contract and that the title to said farm be vested in him and quieted against all the parties.

Appellants' reply alleged that in about the year 1907 the mother set appellee up in farming and leased the farm to him on shares, which arrangement continued until the mother's death; that the mother, and from 1913 to 1926 an incompetent sister of appellee, did all the housework and some outside work for appellee; and denied generally the allegations of the cross-petition.

A default on the cross-petition of Charles Bergfield was duly entered against some twelve of the children and grandchildren of Henrietta Bergfield who were made defendants, and a trial was had as to the other parties to the action, resulting in a finding in favor of the appellee on his answer and cross-petition, and the title to the farm was decreed to be in him and quieted as against all other parties.

1. Appellants' first assignment relates to the ruling of the trial court by which one of the defendants, Emma Revel, a daughter of the deceased, when called as a witness for the appellee, was permitted to testify as to conversations had between the deceased and appellee, the objection being that the prohibition of section 20-1202, Comp. St. 1929, was thereby violated. The second assignment relates to similar testimony given by Anna Bergfield, another daughter of deceased who was also called as a witness for appellee.

The statute provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased

person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness," etc. The testimony of Emma Revel, given over this objection, clearly shows that the conversation about which she testified was between the deceased and appellee, rather than between deceased and the witness, and that the other witness, Anna Bergfield, was also present, and the answer of Anna Bergfield to which the objection was interposed concluded with the statement "And I have heard my brother Charles (appellee herein) and my mother talk the matter over several times since the year 1912."

In *Kroh v. Heins*, 48 Neb. 691, Judge Norval, in referring to the statute in question, said: "It merely excludes proof of transactions and conversations between the witness and the deceased. The provisions of section 329 do not apply where the transaction or conversation was not between the witness and the decedent, but between the latter and a third person." To the same effect are *Hajek v. Hajek*, 108 Neb. 503; *Warnick v. Warnick*, 107 Neb. 747, and other cases. In the last mentioned case it is said: "It is probable that Elizabeth Warnick took part in some of the conversations concerning which she testified; but the record also shows that she took no part in many of the conversations as to which her testimony related. * * * Although the witness may have a direct legal interest in the result of a suit, still he is a competent witness against the representative of a deceased person as to any conversation between the deceased and a third person, in which the witness took no part." Applying this rule to the instant case, it is apparent that the testimony of these two witnesses was not violative of the statute.

2. Appellants' third and fourth assignments relate to the action of the trial court in excluding testimony of Lewis H. Bergfield and Herman Bergfield, both appellants herein, as to their conversations with deceased with reference to the oral agreement and transaction between their mother and appellee, the claim being that, although

these witnesses had a direct legal interest in the result of the action, their testimony comes within the exemption of the statute and was admissible after the transaction and agreement was shown by appellee's witnesses Emma Revel and Anna Bergfield.

The record shows that neither of these witnesses were present at the time of the making of the oral agreement between appellee and his mother. The trial court did not err in excluding appellants' proffered testimony of a witness having a direct legal interest in the action, such testimony relating to a conversation between witness and deceased. The fact that appellee had produced testimony of a witness as to a transaction and conversation between appellee and deceased does not constitute a waiver under the terms of section 20-1202, Comp. St. 1929, because there was no transaction between appellants' witnesses and the deceased, and the conversation offered was not the same conversation nor between the same persons as that related by appellee's witnesses. The *transaction* which is the subject of this action was between the deceased person and the appellee. The provision of the statute which appellants claim constitutes a waiver and rendered the testimony of these witnesses admissible because appellee's witnesses had previously testified regarding the transaction or conversation is not applicable because the transaction was not "between the deceased person and the witness." Neither is it applicable to the conversation "between the deceased person and the witness" because appellee had not introduced any witness who had testified regarding such conversation, but on the other hand had introduced witnesses who had testified to conversations between the deceased person and the appellee. Hence, none of the cases cited by appellants on this question of waiver as applied to this proffered testimony are in point.

3. Furthermore, the record before us fails to show any offer of proof made by appellants. This court will not indulge in speculation or inference as to what answers might have been made to questions propounded on the di-

rect examination of a witness where no offer of proof is made by the party calling the witness. Appellants may not predicate error upon the exclusion of testimony where no offer of proof was made. *Barr v. City of Omaha,* 42 Neb. 341; *Mordhorst v. Nebraska Telephone Co.,* 28 Neb. 610; *Metzger v. Royal Neighbors of America,* 86 Neb. 61. The questions asked did not clearly indicate the materiality of the answers sought. The record affirmatively shows the contrary. Questions 451 and 452 were as follows: "451 Q. And do you know the nature of the agreement that your mother made with him when he got there? A. I do. She told me— 452 Q. What was it?" This was objected to as incompetent and hearsay and the objection sustained. The undisputed evidence is that appellee went to live on his mother's farm in 1907, and that the oral agreement between appellee and his mother was not made until the year 1912, and it is admitted that during the 5 years intervening appellee occupied the farm as a tenant of his mother; hence, the proffered testimony was wholly immaterial. As regards the proffered testimony of Herman Bergfield, question 537 is the only one referred to in the assignment, and that question was fully answered, and both the question and the answer referred to the terms upon which appellee went onto the farm in 1907. It not being shown, either by the question or by any other offer of proof, that either of the proffered witnesses could have given any testimony material to the oral agreement between appellee and his mother, claimed by appellee to have been made in 1912, no prejudicial error is shown in the trial court's rulings.

4. Appellants' fifth assignment is based upon the claim that, appellee having entered into possession of the farm as a tenant, he is now estopped to assert a claim of ownership thereto without proof that he surrendered possession to his landlord. We see in this case no reason for the application of the rule that a tenant cannot deny his landlord's title. The fact that appellee is shown to have been a tenant of his mother from 1907 to 1912, and during that

time and thereafter both lived on the farm until the mother's death, is not inconsistent with appellee's claim of title after his mother's death, but is entirely consistent with such claim. Appellee would not have been prevented from asserting ownership of the farm if his mother had actually conveyed same to him by deed during her lifetime, or from taking and asserting title thereto by devise from his mother. It follows, therefore, that specific performance of the mother's oral contract may be decreed by the court without violating the rule. The application of the rule in the cases cited by counsel for appellants was upon the theory that the possession of the tenant could not ripen into a title adverse to his landlord or confer any right whatever upon the tenant in and of itself unless the tenant either yielded up his possession as tenant, or by an unequivocal act asserted a right of possession inconsistent with his tenancy. In the instant case the appellee is not claiming or asserting any title by virtue of his possession of the land. His claim of title after his mother's death, in fulfilment of the oral contract, is entirely consistent with his tenancy during his mother's lifetime.

5. The remaining assignments of error relate to the sufficiency of the evidence to sustain the oral contract of the mother to deed or will the farm to appellee, and in the consideration of this question we are mindful of the well-established rule that the evidence necessary to warrant specific performance of such a contract must be clear and convincing.

The making of the agreement is established by the direct testimony of two witnesses. Emma Revel, a daughter of Henrietta Bergfield, testified: "I think it was in the year of 1912 that my mother made an agreement in the presence of myself and my brother Charles and my sister Anna, that if he would take care of her and provide well for her as long as, until her death, that she would either deed him the land or make a will that he should have the land or property that she left at her death."

This testimony was corroborated by the testimony of

Anna Bergfield, another daughter, who further said: "I have heard my brother Charles and my mother talk the matter over several times since the year 1912."

James P. Doyle, who lived on a farm four miles from the Bergfield place, and was intimately acquainted with appellee and his mother, testified that the mother told him that she had agreed to give the place to appellee. William N. Kreps, an implement dealer in the nearby town, from whom appellee bought a windmill for the farm, testified that the mother said to him: "I gave him (appellee) the place and if he wants to improve it let him go ahead and improve it. I gave him the place." Henry Huselbusch, another farmer living two miles from the Bergfield farm, testified that the mother told him that "she wanted Charles to have the place, and that she had neglected to deed it to him." These, and other witnesses, testified as to the care which appellee took of his mother and the pleasant relations between the mother and son.

In a trial *de novo*, we find the evidence in the record fully justifies the decree entered by the trial court, and the same is therefore

AFFIRMED.